Commonwealth v. Eichele

C.P. of Carbon County, no. 331 CR93.

*William E. McDonald, assistant district attorney,* for Commonwealth.
*William B. Eichele,* pro se.

NANOVIC, *J.,* June 15, 2004—On May 2, 1990, the body of Judith Dashev, a 43-year-old female, was discovered in a drainage ditch along Badger Road in the town of Kirkwood, Broome County, New York. Investigation by the New York State Police revealed that Ms. Dashev was killed by William B. Eichele, the defendant, at the home of Richard Haag located at Lake Harmony, Kidder Township, Carbon County, Pennsylvania sometime between May 1 and May 2, 1990.

Defendant was charged, inter alia, with third-degree murder, aggravated assault and recklessly endangering another person[1] and, following a jury trial, convicted of these offenses on January 20, 1994. On March 11, 1994, defendant received an aggregate sentence of not less than 10 and no more than 20 years in a state correctional institute to be served consecutive to another sentence previously imposed. Following direct appeal proceedings, defendant's judgment of sentence became final on January 2, 1996, 90 days after his petition for allowance of appeal was denied by the Pennsylvania Supreme Court. See U.S. Supreme Court Rule 13 (petition for writ of certiorari to review a judgment of sentence is deemed timely when it is filed within 90 days after discretionary review has been denied by the Pennsylvania Supreme Court).

Defendant filed a pro se petition for post-conviction relief, his first, on December 24, 2001. See Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§9541-46. In accordance with Pa.R.Crim.P. 904(B), counsel was appointed to represent defendant on this petition. On December 31, 2002, we dismissed the petition as untimely. That decision was affirmed by the Pennsylvania Superior Court on September 25, 2003. No further review of the dismissal of defendant's first petition was requested.

Now before us is defendant's second petition for post-conviction collateral relief, again pro se, filed on May 17, 2004. Defendant again requests appointment of coun-

---

1. 18 Pa.C.S. §§2502(c), 2702(a)(1) and 2705, respectively.

sel which we will deny.[2] In his second petition, defendant raises numerous issues which have been previously litigated on direct appeal and denied, or found to be untimely in defendant's earlier PCRA petition. See 42 Pa.C.S. §9544 (previous litigation and waiver). To the extent defendant seeks to raise any additional new issues, such issues likewise are clearly time-barred, with one possible exception, to be addressed in this opinion. *Commonwealth v. Palmer,* 814 A.2d 700 (Pa. Super. 2002), *appeal denied,* 574 Pa. 764, 832 A.2d 436 (2003) (the PCRA's requirement that a petition be filed within one year of the date the judgment becomes final is mandatory and jurisdictional in nature; unless the petitioner can plead and prove that one of the exceptions to this time-bar applies, the court lacks jurisdiction to grant PCRA relief).

Defendant argues that at trial his constitutional right to confront and cross-examine his accusers was denied in light of the United States Supreme Court's recent decision in *Crawford v. Washington,* ___ U.S. ___, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). Defendant asserts that Richard J. Kadien was permitted to testify with respect to out-of-court statements by Rob Lishansky and David Harding, and that Deborah L. Otterson was permitted to testify regarding out-of-court statements by Richard Haag. In neither instance does defendant specifically identify the out-of-court statements of which he complains.

---

2. There is no right to appointment of counsel on a second or subsequent petition for post-conviction collateral relief for which an evidentiary hearing is not needed to dispose of the petition. Pa.R.Crim.P. 904(B). For the reasons discussed in the text, no hearing is necessary to dispose of defendant's petition. Pa. R.Crim.P. 907(1).

On March 8, 2004, the Supreme Court decided *Crawford*.[3] In that decision, the Supreme Court addressed the issue of the impact of the Sixth Amendment's confrontation clause on the introduction of hearsay evidence by the Commonwealth in a criminal trial.[4] Previously the court had held that the confrontation clause did not "bar admission of an unavailable witness's statement against a criminal defendant if the statement bears 'ad-

---

3. In contending that this issue is not barred by the PCRA's one-year period of limitations, defendant relies on the following exception to the one-year time bar appearing in 42 Pa.C.S. §9545(b)(1)(iii): "the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively."

The PCRA requires that this exception, like the other enumerated exceptions to the one-year time bar, be filed within 60 days of the date the claim could have been presented. 42 Pa.C.S. §9545(b)(2). This 60-day time period is likewise mandatory and jurisdictional in nature and must be respected by the court. *Commonwealth v. Fahy*, 558 Pa. 313, 737 A.2d 214, 222 (1999).

Defendant's petition filed on May 17, 2004, was filed 70 days after *Crawford* was decided. Defendant's attempt to circumvent this statutory requirement by averring in his petition that he immediately filed for relief upon learning of the *Crawford* decision will not avail defendant. See *Commonwealth v. Baldwin*, 789 A.2d 728 (Pa. Super. 2001) (finding late filing under section 9545(b)(2) not excused by petitioner's incarceration and prompt filing upon learning of the constitutional issue). Notwithstanding our conclusion that defendant's newly discovered *Crawford* issue is itself time-barred, for purposes of completeness we will address this issue. Parenthetically, we note that it is also arguable whether the Supreme Court's recent and clarifying pronouncements in *Crawford* are retroactive.

4. The Sixth Amendment's confrontation clause provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." The same right is protected by Article I, Section 9 of the Pennsylvania Constitution.

equate indicia of reliability.' To meet that test, evidence must either fall within a 'firmly rooted hearsay exception' or bear 'particularized guarantees of trustworthiness.' " *Id.* at 1358, citing *Ohio v. Roberts,* 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed. 2d 597 (1980). The test was solely one of reliability as determined by the historical basis of the hearsay exception claimed and the facts developed at trial, a legal issue to be decided by the trial judge, and was not dependent on whether the hearsay exception at issue was testimonial in nature or whether the opportunity to cross-examine the declarant of the statement previously existed. *Id.* at 1369. The opportunity to cross-examine was simply a factor in determining reliability.

In *Crawford,* after reviewing its historical context and underpinnings, the court held that the confrontation clause only applies to testimonial hearsay, that is, hearsay which is the equal or equivalent of ex parte testimony and that, with respect to testimonial hearsay, such statements may only be admitted if the declarant is actually unavailable for trial *and* only if the defendant had a prior opportunity to cross-examine.[5]

"Where testimonial statements are involved, we do not think the framers meant to leave the Sixth Amendment's protection to the vagaries of the rules of evidence, much less to amorphous notions of 'reliability.' Certainly none of the authorities discussed above acknowledges any gen-

---

5. "[W]hen the declarant appears for cross-examination at trial, the confrontation clause places no constraints at all on the use of his prior testimonial statements." *Crawford v. Washington,* ___ U.S. ___, 124 S.Ct. 1354, 1369 n.9, 158 L.Ed.2d 177 (2004).

eral reliability exception to the common-law rule. Admitting statements deemed reliable by a judge is fundamentally at odds with the right of confrontation. To be sure, the clause's ultimate goal is to ensure reliability of evidence, but it is a procedural rather than a substantive guarantee. It commands, not that evidence be reliable, but that reliability be assessed in a particular manner: by testing in the crucible of cross-examination." *Id.* at 1370.

Under the test announced in *Crawford,* a critical distinction is drawn between hearsay which is testimonial in nature and hearsay which is not.

The hallmark of testimonial statements appears to be solemn declarations or affirmations made in a formal proceeding or formal manner, or in an official setting, for the purpose of establishing or proving some fact which the declarant expects or reasonably should expect will be used for further legal proceedings. *Id.* at 1364. Nevertheless, the Supreme Court explicitly left open for the future "any effort to spell out a comprehensive definition of 'testimonial.' " *Id.* at 1374. In doing so, the court also stated: "whatever else the term covers, it applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations." *Id.* at 1374. "Where testimonial evidence is at issue . . ., the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination." *Id.* at 1374.

In contrast, "[w]here nontestimonial hearsay is at issue, it is wholly consistent with the Framers' design to afford the states flexibility in their development of hearsay law—as does *Roberts,* and as would an approach that exempted such statements from confrontation clause

scrutiny altogether." *Id.* at 1374. Examples of non-testimonial hearsay provided by the court are business records or statements in furtherance of a conspiracy. *Id.* at 1367. The admissibility of this form of hearsay is dependent on reliability factors for which the prior opportunity to cross-examine is not a necessary condition for admissibility.

We have examined thoroughly the trial testimony of both Kadien and Otterson. Kadien was the senior investigator of the New York State Police first called to the scene when Ms. Dashev's body was discovered. Kadien oversaw the investigation and prosecution of the case. At no point does Kadien mention Lishansky in his testimony. Kadien's sole reference to Harding is to identify Harding as an ID specialist who was present when Dashev's apartment was searched. (N.T., 1/13/94, p. 31.) No out-of-court statements attributable to Harding are referred to. Accordingly, this claim of a constitutional confrontation violation is without any evidentiary basis and clearly without merit.

Otterson was Haag's girlfriend at the time Dashev was killed. She was present when defendant arrived at Haag's home at Lake Harmony with Dashev, his girlfriend, at approximately 10 p.m. on April 30, 1990. The evening of May 1, 1990 Otterson and Haag spent the night together in the master bedroom on the second floor of Haag's home while defendant and Dashev used a bedroom on the first floor. The following morning, at approximately 9 a.m., Haag went to check defendant's bedroom. Haag had earlier asked defendant to leave and apparently believed he was already gone. When he opened the door, Otterson heard Haag exclaim "Oh, my God!; I can't be-

lieve it. Oh, my God; Don't go in there." (N.T., 1/13/94, p. 147.) When Otterson asked, "What's the matter?", Haag responded, "I think she's dead." (N.T., 1/13/94, p. 147.) Otterson entered the room regardless and observed Dashev lying dead on the floor with her hands tied behind her back, her feet tied together and her head covered with duct tape. (N.T., 1/13/94, p. 148.)

Assuming these are the statements of which defendant complains, they are not only a classic example of an excited utterance, but clearly non-testimonial.[6] By definition, an excited utterance is one made "while the declarant was under the stress of excitement caused by a startling event or condition." Pa.R.E. 803(a). An excited utterance depends for its reliability, and consequently its admissibility, on being both spontaneous and contemporaneous; it is not the product of deliberation or reflection. Cf. *White v. Illinois,* 502 U.S. 346, 112 S.Ct. 736,

---

6. Other statements which Otterson attributes to Haag were either non-hearsay or offered for a purpose other than the truth asserted. To the extent Otterson testified that she overheard Haag asking defendant to leave, this is the equal of a command or verbal act and not hearsay. *Commonwealth v. Jones,* 374 Pa. Super. 431, 435, 543 A.2d 548, 550 (1988), *appeal denied,* 522 Pa. 573, 559 A.2d 35 (1989). That portion of this same conversation in which Otterson stated she heard Haag tell the defendant, "You are not doing the right thing; I don't know what you are doing," was specifically stricken by the court and the jury instructed to completely disregard such evidence. (N.T., 1/13/94, pp. 138-39.) When Otterson testified that after defendant had left, Haag received a call—purportedly from defendant—in which the caller requested both Otterson and Haag to leave the home for two hours, defendant's testimony was to the same effect. (N.T., 1/13/94, p. 149; N.T., 1/18/94, p. 550.) Not only are all of these statements non-testimonial and, therefore, not affected by *Crawford,* to the extent any of such statements were arguably admitted in error, the error was harmless.

116 L.Ed.2d 848 (1992) (finding that a "spontaneous declaration" was a firmly-rooted hearsay exception—in accordance with the *Roberts* standard—and, therefore, the Sixth Amendment did not bar its admissibility at trial).

Conceptually, an excited utterance is at the opposite end of the hearsay spectrum from testimonial hearsay. Haag's statements, as reported by Otterson, do not exhibit any of the hallmarks of a testimonial statement: one which is solemn, deliberate and anticipated to be used formally. These statements, then, are not governed by the *Crawford* decision and no error occurred in their admission.

For the foregoing reasons, a notice of our intent to dismiss defendant's petition without a hearing will be issued this same date. The allegations in the petition are insufficient to warrant relief and, because of the time constraints imposed by the PCRA, no purpose would be served by any further proceedings.

### ORDER

### *Notice of Proposed Dismissal of Petition Under Post Conviction Relief Act*

And now June 4, 2004, upon consideration of defendant's petition under the Post Conviction Relief Act, and it appearing that there are no genuine issues of material fact and that petitioner is not entitled to post-conviction collateral relief, and that no purpose would be served by any further proceedings, it is hereby ordered and decreed that the court intends to deny and dismiss the petition for the following reasons:

470

(1) The issues raised by petitioner have either been fully litigated or could have been previously raised on direct or collateral appeal and are therefore waived.

(2) Petitioner's petition is untimely being time barred by not only the one-year period of limitations provided for in paragraph 1 of section 9545(b) of the PCRA, but also, with respect to petitioner's *Crawford* claim, by the 60-day time limit in section 9545(b)(2).

(3) The testimony of neither Richard J. Kadien nor Deborah L. Otterson was violative of the United States Supreme Court's recent decision in *Crawford v. Washington.*

(4) Defendant is entitled to file a response to this order notifying of our intent to dismiss the petition within 20 days of the date of this notice.

For the further reasons more fully stated in our accompanying memorandum opinion of this same date, it is further ordered and decreed that petitioner's motion for appointment of counsel and request for a hearing be, and the same hereby are, denied. Defendant's request to proceed in forma pauperis is granted.