## Commonwealth *vs.* Joseph A. Pelletier.

No. 07-P-286.

Essex. November 5, 2007. - January 15, 2008.

Present: Grasso, Dreben, & Green, JJ.

*Constitutional Law,* Confrontation of witnesses. *Evidence,* Hearsay, Testimonial statement. *Practice, Criminal,* Confrontation of witnesses, Hearsay. *Assault and Battery.*

At the trial of a criminal complaint charging the defendant with assault and battery, the admission in evidence of testimony from a police officer that the defendant's wife (who did not testify) told him she had fallen down the stairs did not implicate the defendant's right to confront witnesses against him, where although the statement was testimonial, it was not offered to prove the truth of anything asserted therein, but rather to set the context for the officer's investigation. [69-73]

The evidence at a criminal trial was sufficient to convict the defendant of assault and battery. [73-74]

Complaint received and sworn to in the Lawrence Division of the District Court Department on May 16, 2005.

The case was tried before *Thomas M. Brennan,* J.

*Jennifer H. O'Brien* for the defendant.

*Kenneth Bresler,* Assistant District Attorney, for the Commonwealth.

Dreben, J. In response to a 911 call from the defendant, police Officer Thomas Cuddy arrived at a rooming house in Lawrence and found the defendant and his wife standing outside. As the wife had serious facial injuries, Cuddy's first concern was for her "health and well being." He immediately called an ambulance. Thereafter, Cuddy separated the wife from the defendant so that she was about fifty feet away from him, with her back turned toward him. The wife appeared nervous and confused. When he asked her what happened, she stated that she "fell down the stairs."

The defendant was charged with assault and battery and, after a jury trial, was convicted of that offense. His wife, with whom he was living at the time of trial, did not appear as a witness. On appeal he claims that the admission of his wife's statement, introduced through Officer Cuddy, violated the confrontation clause of the Sixth Amendment to the United States Constitution, as set forth in *Crawford* v. *Washington*, 541 U.S. 36 (2004).[1] He also claims there was insufficient evidence to support his conviction and that his motions for a required finding of not guilty should have been granted. We affirm his conviction.

1. *Additional evidence.* Officer Cuddy was the first witness at trial. After he testified that he had responded to a 911 call, the audio tape of that call was played to the jury.[2] When he resumed his testimony, Cuddy recounted the evidence described at the beginning of this opinion. He stated that once the ambulance had arrived, and while the wife was being treated, he turned to question the defendant. As soon as Cuddy asked about the incident, the defendant became very angry. Cuddy smelled a strong odor of alcohol and noticed the defendant was unsteady on his feet. Cuddy had not detected any odor of alcohol on the wife.

When asked what had happened, the defendant explained that he had come home from work at about 4:00 P.M., and "found his wife in that condition." When questioned why it had taken him until 11:00 P.M. to call the police, the defendant gave a different explanation. He stated that he had come home at 4:00 P.M., found a condom in the room he shared with his wife, became very angry and left to get some drinks. When he came back hours later, he "found his wife in that condition."

Cuddy noticed a fresh cut on the knuckles of the defendant's

---

[1]The confrontation clause of the Sixth Amendment to the United States Constitution provides: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him. . . ." In cases involving the hearsay rule and its exceptions, the Supreme Judicial Court has "held that the protection provided by art. 12 [of the Massachusetts Declaration of Rights] is coextensive with the guarantees of the Sixth Amendment . . . ." *Commonwealth* v. *DeOliveira*, 447 Mass. 56, 57 n.1 (2006). *Commonwealth* v. *Lao*, 450 Mass. 215, 223 (2007).

[2]The record on appeal does not include a transcript of the tape; instead, there is a notation that the tape is not audible enough to be transcribed.

right hand and blood splatters on his shirt and forehead. That the cut was on the right hand was significant to Cuddy because the victim's injuries were to the left side of her face. Asked how he got the cut and the blood on his shirt and face, the defendant answered that "he had no idea." Cuddy arrested the defendant, and as he placed him in the back of his cruiser, the defendant turned toward his wife "and yelled out, 'what did you tell him?' "

While other officers took charge of the defendant, Cuddy went into the rooming house and up the stairs to the couple's room. There was no blood on the stairs, but there was blood in the room and in a bathroom shared with other occupants of the rooming house. In Cuddy's opinion, the wife's injuries were not consistent with falling down the stairs.

The only additional witness, other than the defendant, was the wife's daughter. She testified that after the incident, her mother did not go home with the defendant, but came to stay with her and the wife's parents. The wife's injuries were so severe that she was bedridden, could not eat, and had to be fed a liquid diet. After about two weeks the wife received a telephone call from the defendant, immediately left, and "ran out the house without shoes on in a cab." Both Cuddy and the daughter had taken photographs of the injured wife, which were introduced in evidence.

Taking the stand, the defendant stated that his wife was an alcoholic. When she was sober, they had a loving relationship, but infidelity had been a problem. When he came home on the day of the incident, he found his wife face down on the bed unconscious, fully clothed and completely inebriated, a bottle of liquor by her side. She had no injuries, but was heaving to get air. After seeing a condom wrapper in the bathroom, he left with the bottle, went to a park and drank. He subsequently went to a bar, hoping she would be there. When he returned to the apartment, he found her in need of medical attention, telephoned 911, and carried her down the stairs. Upon arriving home after being released on bail, he found a note on the bed, "like a love letter." He called his wife after about two weeks; she said she wanted to return home, and she came back.

2. *Admission of wife's statement.* Although the defendant

objected to the introduction in evidence of the wife's statement that she fell down the stairs on hearsay grounds,[3] the statement was admitted. The judge instructed as follows:

> "That particular statement is not offered for the truth; what the officer just testified to that he was told that she fell down the stairs. It's offered to explain and put in context what the officer's investigation was."

The *Crawford* decision "reestablished the principle that testimonial out-of-court statements are inadmissible under the confrontation clause of the Sixth Amendment to the United States Constitution, regardless of local rules of evidence, unless the declarant is available at trial or the declarant formally is unavailable to testify and the defendant had a prior opportunity to cross-examine the declarant." *Commonwealth v. Gonsalves*, 445 Mass. 1, 3 (2005), cert. denied, 548 U.S. 926 (2006). *Commonwealth v. Lao*, 450 Mass. 215, 223-224 (2007). See *Commonwealth v. Burgess*, 450 Mass. 422, 426 (2008). In interpreting *Crawford*, the Supreme Judicial Court held that statements elicited through "questioning by law enforcement agents . . . other than to secure a volatile scene or to establish the need for or provide medical care" are "per se testimonial and therefore implicate the confrontation clause." *Gonsalves, supra* at 9. In the present case, although there was originally a medical emergency, by the time the defendant's wife answered the question, "What happened?" the ambulance had been called and the urgency had subsided. See *Commonwealth v. Galicia*, 447 Mass. 737, 745 (2006). Thus, the wife's answer to Cuddy's question cannot be viewed as nontestimonial on the basis set forth in *Gonsalves, supra, Commonwealth v. Lao, supra* at 226, and *Davis v. Washington*, 547 U.S. 813, 822 (2006) (statements nontestimonial if "primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency").

There is, however, also a significant footnote in *Crawford* that the Supreme Judicial Court in *Gonsalves, supra*, and also in the more recent cases of *Commonwealth v. Lao, supra*, and *Commonwealth v. Burgess, supra*, had no occasion to discuss, as

---

[3]Unfortunately, the conference at side bar could not be transcribed. There are numerous other gaps and inaudible portions of the proceedings.

the court in neither case was concerned with statements introduced for purposes other than their truth. In *Crawford*, after pointing out that the confrontation clause does not bar admission of a statement if the declarant is present at trial to defend or explain it, the United States Supreme Court noted parenthetically:

> "The Clause also does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted. See *Tennessee* v. *Street*, 471 U.S. 409, 414 (1985)."[4]

*Crawford, supra* at 59-60 n.9.

We do not believe that the Supreme Judicial Court would, on this record, hold that the confrontation clause bars the wife's statement. We note that all of the Federal Circuit Courts of Appeals (except the District of Columbia Circuit, which has not dealt with the question) and the majority of State courts have indicated, usually on the basis of the *Crawford* footnote, that statements, even if testimonial, when not offered for their truth do not implicate the confrontation clause.[5]

---

[4]In *Tennessee* v. *Street, supra* at 411-412, the prosecutor introduced the confession of an accomplice, one Peele, for the nonhearsay purpose of rebutting the defendant's testimony that his confession was coerced and that he was pressured by a sheriff to write the same confession as Peele had written. Peele's confession was introduced to show there were differences between the two confessions and that the defendant's contained details of the crime not in Peele's, which, the prosecutor argued, the defendant knew because he participated in the murder. *Id.* at 412. The Supreme Court held: "The nonhearsay aspect of Peele's confession — not to prove what happened at the murder scene but to prove what happened when [defendant] confessed — raises no Confrontation Clause concerns." *Id.* at 414.

In a similar case, *Commonwealth* v. *Brum*, 438 Mass. 103, 116-117 (2002), albeit prior to *Crawford*, the Supreme Judicial Court held, citing *Tennessee* v. *Street, supra,* that two statements offered not for their truth but to show that the defendant and his brother John had given identically false accounts of the same precise details were nonhearsay and did not violate the confrontation clause.

[5]See *United States* v. *Jimenez,* 419 F.3d 34, 44 (1st Cir. 2005), cert. denied, 546 U.S. 1189 (2006); *United States* v. *Matera,* 489 F.3d 115, 122 (2d Cir.), cert. denied, 128 S. Ct. 424 (2007), and cert. denied sub nom. *Carbonaro* v. *United States,* 128 S. Ct. 925 (2008); *United States* v. *Lore,* 430 F.3d 190, 209 (3d Cir. 2005); United States *vs.* Loving, U.S. Ct. App. No. 06-4708, slip op. at 7 (4th Cir. July 5, 2007), cert. denied, 128 S. Ct. 328 (2007); *United States* v. *Holmes,* 406 F.3d 337, 349 (5th Cir.), cert. denied, 546 U.S. 871 (2005);

*Commonwealth v. Pelletier.*

The trial judge in this case viewed the wife's statement as setting the context for the police investigation. Even if introduced for a different purpose, the wife's statement was not being offered to prove the truth of anything asserted therein.[6] As pointed

*United States* v. *Cromer,* 389 F.3d 662, 676 (6th Cir. 2004); *United States* v. *Nettles,* 476 F.3d 508, 517 (7th Cir. 2007); *United States* v. *Rodriguez,* 484 F.3d 1006, 1013-1014 (8th Cir.), cert. denied, 128 S. Ct. 316 (2007); *United States* v. *Mitchell,* 502 F.3d 931, 966 (9th Cir. 2007); *United States* v. *Faulkner,* 439 F.3d 1221, 1226 (10th Cir. 2006); United States *vs.* Valdes, U.S. Ct. App. No. 05-16139, slip op. at 4-5 (11th Cir. Jan. 23, 2007), cert. denied, 128 S. Ct. 163 (2007).

See also *Benjamin* v. *State,* 940 So. 2d 371, 379 (Ala. Ct. Crim. App. 2005), cert. denied, 127 S. Ct. 494 (2006); *State* v. *Roque,* 213 Ariz. 193, 214 (2006); *Dednam* v. *State,* 360 Ark. 240, 248 (2005); *People* v. *Ledesma,* 39 Cal. 4th 641, 707 n.18 (2006), cert. denied, 127 S. Ct. 1910 (2007); *People* v. *Isom,* 140 P.3d 100, 103 (Colo. Ct. App. 2005); *Lewis* v. *United States,* 930 A.2d 1003, 1010-1011 (D.C. 2007); *Little* v. *State,* 280 Ga. App. 60, 64 (2006); People *vs.* Peoples, Ill. App. Ct. No. 1-05-0472, slip op. at 6-7 (Nov. 30, 2007); *State* v. *Newell,* 710 N.W.2d 6, 24 (Iowa 2006); *State* v. *Araujo,* 169 P.3d 1123, 1126-1127 (Kan. 2007); *People* v. *McPherson,* 263 Mich. App. 124, 133 (2004); State *vs.* Frazier, Minn. Ct. App. No. A06-1068, slip. op. at 5 (Sept. 25, 2007); *Thong Le* v. *State,* 913 So. 2d 913, 942 (Miss.), cert. denied, 546 U.S. 1004 (2005); *State* v. *White,* 155 N.H. 119, 125 (2007); *People* v. *Reynoso,* 2 N.Y.3d 820, 821 (2004); *State* v. *Wiggins,* 648 S.E.2d 865, 871 (N.C. Ct. App. 2007); *State* v. *Smith,* 162 Ohio App. 3d 208, 214 (2005); *Stouffer* v. *State,* 147 P.3d 245, 264 (Okla. Ct. Crim. App. 2006), cert. denied, 127 S. Ct. 2060 (2007); *State* v. *Mack,* 337 Ore. 586, 592 n.7 (2004); *Commonwealth* v. *Dargan,* 897 A.2d 496, 500 (Pa. Super. Ct. 2006); State *vs.* Emesibe, Tenn. Ct. Crim. App. No. M2003-02983-CCA-R3-CD, slip op. at 10 (March 28, 2005); *Hernandez* v. *State,* 219 S.W.3d 6, 12-13 (Tex. Ct. App. 2006); *Hodges* v. *Commonwealth,* 272 Va. 418, 428-429 (2006). Cf. *State* v. *Carpenter,* 275 Conn. 785, 821 (2005), cert. denied, 547 U.S. 1025 (2006); Jones *vs.* State, Del. Sup. Ct. No. 482, 2005, slip op. at 17 n.45 (Dec. 12, 2007); *State* v. *Smothers,* 927 So. 2d 484, 489-490 (La. Ct. App. 2006); *State* v. *Mason,* 160 Wash. 2d 910, 921-924 (2007); *Schultz* v. *State,* 169 P.3d 81, 85 (Wyo. 2007).

[6]The defendant does not claim that the purpose found by the judge was improper. Caution must, however, be taken in admitting out-of-court statements on the rationale that they provide context for the investigation. See *United States* v. *Maher,* 454 F.3d 13, 22 (1st Cir.), cert. denied, 127 S. Ct. 568 (2006) (pointing out that the "precise nature of that context is important").

The defendant's brief states:

"Here, the improper hearsay was extremely powerful, since if the victim's statement did not correlate with her injuries, it would support that she was being untruthful as a result of her fear of the defendant."

Other than this argument, the defendant does not raise the thorny problem of implied hearsay. For an extensive discussion of the problems relating to the

out in *Anderson* v. *United States*, 417 U.S. 211, 219-220 (1974), false statements generally do not fall within the rationale of the hearsay rule. Although the *Anderson* case preceded *Crawford*, the same rationale applies after *Crawford*. See, e.g., *United States* v. *Trala*, 386 F.3d 536, 544-545 (3d Cir. 2004), vacated on other grounds, 546 U.S. 1086 (2006), a case also involving false statements where the court held the statements, although not relevant, were not barred by the confrontation clause.

In sum, we consider the *Crawford* footnote applicable and conclude that the confrontation clause does not bar the wife's statement, which was introduced "for purposes other than establishing the truth of the matter asserted." *Crawford*, *supra* at 59-60 n.9. See *Commonwealth* v. *Thomas*, 448 Mass. 180, 188 (2007).

4. *Sufficiency of the evidence.* The judge was correct in denying the defendant's motions for a required finding of not guilty at the close of the Commonwealth's case and after the close of all the evidence. The jury were warranted, based on the circumstantial evidence, in convicting the defendant of assault and battery. The defendant gave Officer Cuddy two different and inconsistent stories as to what he found when he came home at 4:00 P.M. on the day of the incident. The second explanation was given only after he was asked why he waited until 11:00 P.M. to telephone 911. He was unable to explain the cut on his knuckles or give a cause for the blood splatters on his face and clothing.[7] When questioned by the police, he was angry. When he was being placed in the police cruiser, he yelled to the vic-

admission of implied hearsay, including their common law roots, see both the majority and concurring opinions in *Stoddard* v. *Maryland*, 389 Md. 681 (2005). See also advisory committee note to Fed.R.Evid. 801(a), taking the position that verbal implied assertions are not within the definition of hearsay unless intentional.

In this case the defendant has not presented any arguments, reasons, or citation to authority within the meaning of Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975), that the wife's statement contains inadmissible *implied* hearsay, and we decline to enter the implied hearsay thicket on this record. We also need not discuss the extent to which the principles of the hearsay rule and the confrontation clause are coextensive.

[7]The jury were entitled to accept Officer Cuddy's opinion, introduced without objection, that the blood spatters were not consistent with someone trying to console the wife.

tim, "[W]hat did you tell him?" These circumstances, as well as the blood in the room and bathroom, were sufficient to warrant the jury finding under the standard of *Commonwealth* v. *Latimore*, 378 Mass. 671, 676-677 (1979), that the defendant caused the severe injuries to his wife and to convict him of assault and battery.

*Judgment affirmed.*