# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-2431

_____

United States of America,                          *
                                                    *
    Plaintiff - Appellee,                           *
                                                    *     Appeal from the United States
v.                                                  *     District Court for the
                                                    *     Eastern District of Arkansas.
Shari Ann Tucker,                                   *
                                                    *
    Defendant - Appellant.                          *

_____

Submitted:  February 11, 2008
Filed:  July 17, 2008

_____

Before LOKEN, Chief Judge, RILEY and SMITH, Circuit Judges.

_____

LOKEN, Chief Judge.

Shari Ann Tucker appeals her conviction for being an accessory after the fact to a bank robbery in violation of 18 U.S.C. § 3.  Tucker argues that the evidence was insufficient to support the jury's verdict and that the district court[1] abused its discretion in permitting the prosecutor to cross examine her based on the bank robber's testimonial statement to FBI investigators.  (She also raised a sentencing issue but conceded at oral argument that the issue became moot when she completed

_____

[1] The HONORABLE G. THOMAS EISELE, United States District Judge for the Eastern District of Arkansas.

serving her thirty-three-month sentence, thirty months of which were served by pre-sentence detention.) We affirm.

The evidence at trial, viewed most favorably to the jury verdict, established that Tucker and her boyfriend, Perry Robson, traveled the United States for some two years in cars registered to Tucker. Entering Arkansas from Mississippi in November 2004, Robson instructed Tucker to drive into Marion, Arkansas, and park near First Community Bank of Eastern Arkansas. Tucker stayed in the black Jeep Wrangler while Robson entered the bank, walked to the counter, and gave the teller a handwritten note reading, "Give me all your money. I have a gun." The teller handed Robson $13,000 cash. A bank customer saw Robson run from the bank to the Jeep, spilling cash as he went, and enter on the passenger side. The Jeep sped off. The bank teller described Robson, including a prominent tattoo. Based on descriptions of Robson and the vehicle, police stopped the Jeep within the hour. They found Tucker behind the wheel, Robson in the passenger seat, the cash stuffed in Robson's hat in plain view, and the torn-up robbery note in Tucker's purse.

When questioned following her arrest, Tucker told police she was nervous and suspicious when Robson left the Jeep, "kind of knowing what was going to happen." She later told the FBI that she knew when Robson got out of the Jeep he was going to do something "bad." In a written statement, Tucker said that after Robson returned to the Jeep, "I knew Perry had robbed the bank." At trial, however, Tucker testified that, when Robson returned to the Jeep with an armload of cash and she asked what he had done, Robson said it was none of her business, "cracked me across the face," and said to "get the Hell going." Tucker testified that Robson did not tell her he robbed the bank until just before they were stopped by the police. She denied driving at high speed away from the bank or when stopped thirty minutes later and said she had "no idea" why the torn-up robbery note was in her purse.

When questioned following his arrest, Robson confessed to the robbery but said that Tucker was unaware of his intentions. In a subsequent oral statement to the FBI summarized in an "FD-302" report, Robson admitted committing three prior bank robberies earlier in 2004 in Oklahoma, West Virginia, and Florida. He said that Tucker drove the get-away vehicle in the first robbery, and he told her about the other two shortly after committing them. Not long after this interview, Robson hung himself in the county jail.

The jury never learned of Robson's statement about the prior robberies, as neither the FD-302 report nor agent testimony recounting what Robson told the FBI was offered into evidence. However, anticipating that Tucker would testify and deny she knew Robson had robbed the bank when he re-entered the Jeep, the government sought and received, over Tucker's timely objection, the district court's pretrial approval to ask the following questions that were then asked during Tucker's cross-examination at trial:

> Q: Isn't it true that sometime during the summer of 2004, Perry Robson robbed a bank in West Virginia, and that afterwards at his mother's house in Ohio, he told you about the bank robbery?
>
> A: No, ma'am, I don't recall that.
>
> Q: Isn't it true that at approximately October of 2004, Perry Robson robbed a bank in Florida and told you about it four or five hours later in a motel room?
>
> A: No, ma'am, I don't recall that.
>
> Q: . . . . Isn't it true that in approximately April or May of 2004 in Oklahoma, Perry Robson robbed a bank, and that you drove him from the scene of that bank robbery in a red 1991 Pontiac Sunbird with Ohio license plates?
>
> A: No, ma'am.

**1. Sufficiency of the Evidence.** To convict Tucker of violating 18 U.S.C. § 3,[2] the government had to prove beyond a reasonable doubt that Tucker knew Robson had robbed the Marion bank when she drove him from the crime scene. See United States v. Guel, 184 F.3d 918, 921-22 (8th Cir. 1999). Tucker argues that she was the only witness to what occurred when Robson returned to the Jeep, and it was therefore unreasonable for the jury to reject her testimony that Robson slapped her and ordered her to drive away without telling her he had robbed the bank. But an accessory defendant's knowledge of the predicate offense may be proved by circumstantial evidence. Id. at 922. Here, there was more than ample circumstantial evidence that Tucker knew Robson had robbed the bank when he returned to the Jeep with armfuls of cash and told her to hurry away.

**2. The Cross Examination Issue.** Because the critical issue at trial was whether Tucker knew Robson had robbed the bank when she assisted his get-away, evidence that Tucker knew Robson had committed other bank robberies earlier that year was clearly relevant and therefore admissible. See Fed. R. Evid. 402. Such evidence would also impeach the credibility of her testimony denying that she knew Robson robbed the bank. Thus, the prosecutor was on sound ground in cross examining Tucker about her knowledge of prior bank robberies by Robson. But the prosecutor's questions were not general. As worded, they strongly suggested the prosecutor knew that three other bank robberies had in fact been committed in 2004 at specific times and places, places where Tucker's testimony suggested she and Robson had traveled. This type of question, if asked with no good faith basis in fact for what it infers, creates the risk that the government is using the question, without regard to the witness's answer, "to waft an unwarranted innuendo into the jury box." United States v. Beeks, 224 F.3d 741, 746 (8th Cir. 2000) (quotation omitted). Here,

---

[2]§ 3 provides in relevant part: "Whoever, knowing that an offense against the United States has been committed . . . assists the offender in order to hinder or prevent his apprehension . . . is an accessory after the fact."

the prosecutor alerted the district court to this issue before trial, and the court agreed that Robson's statement to the FBI, as reflected in the FD-302 report, gave the prosecutor a good faith basis for the fact-specific questions that were asked at trial.

Tucker argues that the district court abused its discretion because the cross examination "violated constitutional and evidentiary principles" and was unduly prejudicial. The constitutional principle alleged is the Confrontation Clause as construed in Crawford v. Washington, 541 U.S. 36, 53-54 (2004), where the Supreme Court held that the Clause prohibits "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had a prior opportunity for cross-examination." Tucker argues that Robson was unavailable at trial, his statements to the FBI were testimonial, she had no prior opportunity to cross-examine, and therefore it violated Crawford to use these statements as a basis for cross examining Tucker at trial.

We agree with the government that the Confrontation Clause was not violated or even implicated by this cross examination because Robson's statements to the FBI as reflected in the FD-302 report were not admitted, offered, or even referred to at Tucker's trial. Crawford, and the Supreme Court cases applying Crawford,[3] have involved out-of-court testimonial statements *admitted* at trial. Crawford reiterated that the Confrontation Clause "does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted." 541 U.S. at 59-60 n.9, citing Tennessee v. Street, 471 U.S. 409, 414 (1985). Nearly every circuit has accordingly held that testimonial statements *offered* for purposes other than their truth do not implicate the Confrontation Clause. See the cases cited in Commonwealth v. Pelletier, 879 N.E.2d 125, 129 n.5 (Mass. App. 2008). Tucker cites no authority for the proposition that use of an out-of-court testimonial statement merely as the good faith factual basis for relevant cross examination of the defendant at trial implicates the

---

[3]See Giles v. California, No. 07-6053 (Sup. Ct. June 25, 2008); Davis v. Washington, 547 U.S. 813 (2006).

Confrontation Clause. And direct authority to the contrary is found in our decision in <u>United States v. Miller</u>, 974 F.2d 953, 960 (8th Cir. 1992), where we held that use of a co-defendant's unredacted confession as the factual basis for cross-examining a defense witness at trial did not violate the Confrontation Clause as construed in <u>Bruton v. United States</u>, 391 U.S. 123 (1968).

Tucker further argues that the unsigned FD-302 report was not a sufficiently reliable recounting of Robson's unrecorded statement to the FBI to provide a good faith basis in fact for the prosecutor's cross examination. After hearing arguments of counsel and reviewing the FD-302 reports and written statements of both Robson and Tucker, the district court concluded that the Robson FD-302 report did provide a good faith basis for the prosecutor's questions. After careful review of the entire trial and pretrial record, we agree.

The judgment of the district court is affirmed.

_____