NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

15-P-131                                        Appeals Court


COMMONWEALTH  vs.  CARLOS RODRIGUEZ.


No. 15-P-131.

Hampden.      March 18, 2016. - September 22, 2016.

Present:  Milkey, Agnes, & Maldonado, JJ.


Assault and Battery.  Evidence, Spontaneous utterance, Hearsay,
    Unavailable witness.  Constitutional Law, Confrontation of
    witnesses.  Practice, Criminal, Hearsay, Confrontation of
    witnesses.  Witness, Unavailability.



Complaint received and sworn to in the Springfield Division
of the District Court Department on March 7, 2014.

A motion in limine was heard by Robert A. Gordon, J., and
the case was tried before William P. Hadley, J.


S. Anders Smith for the defendant.
Thomas R. Worger (Amal Bala, Assistant District Attorney,
with him) for the Commonwealth.


AGNES, J.  The defendant, Carlos Rodriguez, was convicted

on August 14, 2014, of assault and battery following a two-day

jury trial.  He was sentenced to a term of six months in a house

of correction.  The Commonwealth's case was based principally on

the testimony of West Springfield police Officer Paulina Hannah, the second officer to respond to the scene of a domestic violence incident. She testified to certain statements made to her by the victim, who did not testify at the trial. On appeal, the defendant argues that the trial judge improperly admitted those statements because they did not fall within any exception to the hearsay rule, and they violated his independent constitutional right under the Sixth Amendment to the United States Constitution and art. 12 of the Massachusetts Declaration of Rights to confront the witnesses against him.

We agree with the judges[1] below that the statements in question made by the victim to Officer Hannah were admissible as excited utterances. However, we agree with the defendant that those initial statements were testimonial, and thus were subject to the confrontation clause. Finally, we conclude that despite the testimonial character of those statements, the defendant's confrontation rights were not violated and the statements were properly admitted, because the victim was unavailable to testify at trial and the defendant had an adequate prior opportunity to cross-examine her at a pretrial dangerousness hearing.

---

[1] The question whether the victim's statements to Officer Hannah were testimonial was the subject of rulings by two judges: the motion judge who acted on the defendant's pretrial motion in limine and the trial judge who acted on the defendant's objection at trial.

Background.  Prior to trial, the defendant filed a motion in limine to exclude all of the statements made by the victim to the first police officer at the scene, Officer Robert Wise, and to Officer Hannah.  Following an evidentiary hearing, at which both officers testified, the motion judge ruled that all of the statements were excited utterances and not subject to the rule against hearsay.  However, the motion judge ruled that the statements made to Officer Wise were inadmissible under the confrontation clause because they were made in response to his questions and therefore were testimonial.  For the same reason, the motion judge also ruled that all of the statements that followed Officer Hannah's request to "tell [her] exactly what happened" were testimonial and not admissible through the testimony of Officer Hannah.  However, the motion judge ruled that the initial statements the victim made to Officer Hannah when she first entered the home (the statements after the conversation with Officer Wise ended and until Officer Hannah asked the victim to tell her what happened) were admissible, as they were neither "testimonial per se" nor testimonial in fact.

At trial, the jury were warranted in finding the following facts.  On the afternoon of October 14, 2013, Officer Wise was dispatched to a residence to investigate a report of a domestic disturbance.  Upon arriving, Officer Wise met the victim in the hallway of the apartment building and observed her to be "very

upset."  The victim had "[t]ears running down her face," "red eyes," and "disheveled" hair, and her "[s]hirt was torn." Officer Wise also observed marks on her arms as well as the front and side of her neck.  He did not see the defendant on the premises.  Officer Wise did not testify to any statements made by the victim.

Shortly after Officer Wise arrived, he was joined by Officer Hannah.  The victim left her conversation with Officer Wise and "went running right over to Officer Hannah."  The victim, who was "crying hysterically [and in a] [v]ery disheveled [condition]," gave Officer Hannah a "big hug."  The victim felt more comfortable with Officer Hannah because they had known one another for years, and they could speak to each other in Spanish.  After giving Officer Hannah a hug and calling her by a specific term of endearment,[2] the victim told Officer Hannah that "Carlos had done this to her."  The victim told Officer Hannah that Carlos had grabbed her by the hair and dragged her down the hallway.  The victim made motions to demonstrate how he had grabbed her.  At that point the defendant objected on the ground that the admission of the statements made by the victim to Officer Hannah violated his rights under the

---

[2] That term is repeatedly transcribed in the record as "mommy," but we take this as a reference to the term "mami," which Officer Hannah testified is a term of endearment in the Hispanic culture that is similar to the term "sweetie" or "honey."

confrontation clause.  A lengthy sidebar discussion ensued.  The judge initially sustained the objection.  The judge then conducted a voir dire hearing, at which Officers Wise and Hannah testified.  After the hearing, the judge overruled the objection, stating that he agreed with the motion judge's ruling.[3]

Officer Hannah then resumed her testimony regarding the initial statements the victim made to her.  The victim had disclosed to Officer Hannah that the defendant had done this to her, and that he had grabbed her by her hair and dragged her across the floor.  Officer Hannah also testified that the victim said the defendant had "grabbed her by the neck" and she "was having a hard time breathing because [the defendant] was squeezing her neck."

As a result of a prior hearing where the victim had asserted her rights under the Fifth Amendment to the United States Constitution and, as found by the motion judge, was no longer available to testify, the victim did not testify at the trial.  Whether the victim had a basis to assert the privilege is not an issue on appeal.  The defendant presented no

---

[3] The voir dire concerned the foundational requirements of the excited utterance exception, namely, temporal proximity.  In finding that the foundational requirements were met and in admitting the victim's initial statements to Officer Hannah, the trial judge implicitly accepted the motion judge's finding that those statements were not testimonial, and did not conduct an independent confrontation clause analysis.

witnesses, but defense counsel read into the record portions of the victim's prior sworn testimony from a pretrial dangerousness hearing pursuant to G. L. c. 276, § 58A.  At that hearing, the victim testified that she did not remember what happened on October 14, 2013; that the injury to her hand had happened before that day; that the defendant never grabbed her by the hair, pinned her down, or choked her; and that she never sought a restraining order against the defendant.  The victim also testified that she had been under the influence of prescription medications and alcohol on that day.

In his closing argument, the defendant relied heavily on the victim's prior sworn testimony from the dangerousness hearing as evidence that her statements made to the police officers at the scene were not credible.  The Commonwealth, in its closing, urged the jury to rely instead on the victim's statements that were made contemporaneous to the event and were the subject of Officer Hannah's testimony.  The jury convicted the defendant of assault and battery.

Discussion.  a.  Admissibility as excited utterances.  A spontaneous or excited utterance is admissible "if (1) there is an occurrence or event 'sufficiently startling to render inoperative the normal reflective thought processes of the observer,' and (2) if the declarant's statement was 'a spontaneous reaction to the occurrence or event and not the

result of reflective thought.'" Commonwealth v. Santiago, 437 Mass. 620, 623 (2002), quoting from 2 McCormick, Evidence § 272, at 204 (5th ed. 1999). See Mass. G. Evid. § 803(2) (2016).[4] We review a judge's decision to admit or exclude evidence based on whether it falls within an exception to the hearsay rule, such as the excited utterance exception, under the abuse of discretion standard. "We defer to the judge's exercise of discretion unless the judge has made '"a clear error of judgment in weighing" the factors relevant to the decision, . . . such that the decision falls outside the range of reasonable alternatives' (citations omitted)." Commonwealth v. Alleyne, 474 Mass. 771, 779 (2016), quoting from L.L. v. Commonwealth, 470 Mass. 169, 185 n.27 (2014).

Here, the trial judge heard evidence, during the voir dire hearing, that Officer Hannah arrived on the scene within five to ten minutes of the radio call dispatching officers to the residence. Prior trial testimony revealed that when Officer

---

[4] Factors of importance to the analysis include "the degree of excitement displayed by the person making the statement[]; whether the statement is made at the place where the traumatic event occurred or at another place; the temporal closeness of the statement to the act it explains; and the degree of spontaneity [shown by the declarant]." Commonwealth v. Joyner, 55 Mass. App. Ct. 412, 414-415 (2002) (citations and footnote omitted). "[T]he statements need not be strictly contemporaneous with the exciting cause; they may be subsequent to it, provided there has not been time for the exciting influence to lose its sway and to be dissipated." Commonwealth v. McLaughlin, 364 Mass. 211, 223 (1973), quoting from Rocco v. Boston-Leader, Inc., 340 Mass. 195, 197 (1960).

Hannah arrived, the victim was "crying hysterically,"
"disheveled," and "trembling."  Her hair was in disarray, her
eyes were red, her shirt was torn, and she had visible bruises
on her body.  The temporal closeness of the statements to the
startling event (being physically beaten), and the evidence of
the victim's condition as upset, in distress, and highly
emotional, provided the trial judge with a firm basis for his
conclusion that her initial statements to Officer Hannah were
the product of the ordeal she had just experienced and not the
result of conscious reflection.  See Commonwealth v. Robinson,
451 Mass. 672, 680-681 (2008).

b.  Admissibility under the confrontation clause.  The more
difficult question is whether the initial statements to Officer
Hannah were testimonial within the meaning of the confrontation
clause.[5]  The reasoning of the judges below was grounded in the
framework set forth in Commonwealth v. Gonsalves, 445 Mass. 1,
17-18 (2005).  The judges reasoned that those statements were
not "testimonial per se" because Officer Hannah did not pose any
questions and they were made "voluntarily and without prodding."[6]

---

[5] It is unnecessary for us to address whether it was error
to exclude as testimonial the victim's statement to Officer Wise
and other statements she made to Officer Hannah, which were also
deemed excited utterances, because their exclusion is not
challenged on appeal.

[6] "Statements made in response to emergency questioning by
law enforcement to secure a volatile scene or determine the need

The judges also considered whether the statements were testimonial in fact.[7] The judges considered whether a reasonable person in the victim's position would have anticipated that her spontaneous statements to Officer Hannah would be used against the defendant in investigating and prosecuting a criminal case. The motion judge, whose reasoning was followed by the trial judge, determined, "based upon the relationship between [the victim] and Officer Hannah and the circumstances that resulted in unsolicited statements," that a reasonable person would not. The motion judge also considered it important that the victim "viewed Officer Hannah as a person to provide her comfort, compassion, and protection based upon her immediate emotional and physical condition without concern for a prospective criminal prosecution."[8]

---

for or provide medical care are not per se testimonial. The same is true for out-of-court statements made in response to questions from people who are not law enforcement agents, and statements offered spontaneously, without prompting, regardless of who heard them." Gonsalves, supra at 10-11.

[7] A statement that is not testimonial per se may nevertheless be testimonial in fact if the court determines that "the declarant knew or should have known [it] might be used to investigate or prosecute an accused. . . . The proper inquiry is whether a reasonable person in the declarant's position would anticipate the statement's being used against the accused in investigating and prosecuting a crime." Gonsalves, supra at 12-13.

[8] The factual findings made by the motion judge and the trial judge regarding the statements by and the conduct of the two police officers who responded to the scene in this case are

The confrontation clause establishes as a bedrock principle of constitutional law the common law's guarantee, subject only to limited exceptions, that in a criminal case the accused has the right to meet the witnesses against him face-to-face.  See Commonwealth v. Bergstrom, 402 Mass. 534, 544-545 (1988); Commonwealth v. Dorisca, 88 Mass. App. Ct. 776, 776-777 (2016). See also Commonwealth v. Mulgrave, 472 Mass. 170, 180 (2015).[9] This right of a person accused of a crime is also protected by the Sixth Amendment.  See Crawford v. Washington, 541 U.S. 36, 50-51 (2004).  Over the past twelve years, since the United States Supreme Court untangled the evidentiary exceptions to the hearsay rule and the confrontation clause,[10] the Supreme Court and other Federal and State courts around the country have attempted to define as precisely as possible the test for classifying an out-of-court statement by a nontestifying witness

entitled to substantial deference.  Our task is to make an independent determination whether the judges correctly applied constitutional principles to the facts found.  See Commonwealth v. Pena, 462 Mass. 183, 192 n.10 (2012).  The victim did not testify before the motion judge or the trial judge.  Thus, we are in as good a position as those judges to determine the understanding and purpose of a reasonable person in the shoes of the victim at the time she spoke to the police.  See Commonwealth v. Haley, 413 Mass. 770, 773 (1992).

[9] See generally Herrmann & Speer, Facing the Accuser: Ancient and Medieval Precursors of the Confrontation Clause, 34 Va. J. Intl. L. 481 (1994).

[10] The one exception to the independence between exceptions to the rule against hearsay and the confrontation clause is the dying declaration.  See Crawford, supra at 56 n.6.

as testimonial or nontestimonial.  See, e.g., Mass. G. Evid. Art. VIII, Introductory Note (2016) (collecting cases).

In Davis v. Washington, 547 U.S. 813 (2006), the Court recognized that the statements involved in Crawford -- statements made during a police interrogation by an individual who had received Miranda warnings and was in police custody -- easily qualified as testimonial because any reasonable person would expect that such statements would be used or available for use at a trial.  Davis, supra at 822, 826-827.  The Davis Court added precision to the test for determining whether a statement is testimonial by stating that judges should consider the function that the police are performing when the statements are made -- the so-called primary purpose test:

> "Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution."

Id. at 822.

In Davis, the Court applied that test to two fact patterns involving domestic violence.  In the lead case from the State of Washington, the victim of a domestic violence attack called 911 and told the police that she had just been physically assaulted in her home by the defendant whom she identified and reported

had just left the scene.  Id. at 817-818.  In concluding that those statements by the victim were not testimonial, the Court relied on three considerations:  the statements related events to the police as they were happening; the statements were made in an attempt to resolve an ongoing emergency; and the statements made were necessary to resolve the present emergency. Id. at 827.

In the companion case from Indiana,[11] on the other hand, the Court concluded that the victim's statements were testimonial because when they were made the emergency had ended, there was no immediate threat to the victim, and the primary purpose of the questioning was to learn what had happened.  Id. at 829-832. Even though the victim was not at a police station when the statements were made, the Court reasoned that the statements

---

[11] In the companion case, the police responded to the victim's home based on a report of a "domestic disturbance." Davis, supra at 819.  The victim was alone on the front porch and appeared to be frightened.  Ibid.  Once inside, the police observed broken glass on the floor from a damaged gas heater that had flames coming out of it and a man, later identified as the defendant, in the kitchen.  Ibid.  The defendant, who identified himself as the victim's husband, told the police that he and the victim had argued, but that "everything was fine," and that the argument had not been physical.  Ibid.  The defendant then became "angry" and had to be restrained in order to permit the police to speak privately with the victim.  Id. at 819-820.  The victim gave the police an oral account of what had happened and then wrote the following statement:  "Broke our Furnace & shoved me down on the floor into the broken glass. Hit me in the chest and threw me down.  Broke our lamps & phone. Tore up my van where I couldn't leave the house.  Attacked my daughter."  Id. at 820.

were made in the context of an investigation into past criminal conduct, and not in an effort to resolve an ongoing emergency. Ibid.

The primary purpose test was applied again in Michigan v. Bryant, 562 U.S. 344 (2011). There, the Court had occasion to apply the test in the setting of statements made to the police by the victim of a gunshot wound to the abdomen, who was lying on the ground in a gasoline station parking lot. Id. at 349. The victim, who was in great pain and spoke with difficulty, responded to police questions about what had happened, who had shot him, and where the shooting had occurred. Ibid. Within five to ten minutes when emergency medical services arrived, the police stopped speaking with the victim. Ibid. The victim was transported to the hospital and died shortly thereafter. Ibid. In reversing the Michigan Supreme Court, which had ruled that the victim's statements were testimonial despite their admissibility as excited utterances, the Court stressed the need for an objective assessment of the circumstances and the purpose that a reasonable party in the shoes of the declarant had when the statements were made. Id. at 350-351, 360.

In concluding that the statements made by the victim were not testimonial, the Bryant Court offered the following:

> "We distinguished the statements in Davis from the
> testimonial statements in Crawford on several grounds,
> including that the victim in Davis was 'speaking about

events <u>as they were actually happening</u>, rather than "describ[ing] past events,"' that there was an ongoing emergency, that the 'elicited statements were necessary to be able to <u>resolve</u> the present emergency,' and that the statements were not formal.  In <u>Hammon</u> [v. <u>Indiana</u>, the companion case in <u>Davis</u>], on the other hand, we held that, '[i]t is entirely clear from the circumstances that the interrogation was part of an investigation into possibl[e] criminal past conduct.'  There was 'no emergency in progress.'  The officer questioning [the victim] 'was not seeking to determine . . . "what is happening," but rather "what happened."'  It was 'formal enough' that the police interrogated [the victim] in a room separate from her husband where, 'some time after the events described were over,' she 'deliberately recounted, in response to police questioning, how potentially criminal past events began and progressed.'  Because her statements 'were neither a cry for help nor the provision of information enabling officers immediately to end a threatening situation,' we held that they were testimonial."

<u>Bryant</u>, <u>supra</u> at 356-357 (citations omitted).[12]

The primary purpose test has been applied by the Supreme Judicial Court in a number of cases in a manner that is consistent with the <u>Crawford</u>-<u>Davis</u>-<u>Bryant</u> trilogy.[13]  For

---

[12] In <u>Bryant</u>, the Court also identified factors to consider when determining whether an emergency exists:  "(1) whether an armed assailant poses a substantial threat to the public at large; (2) the type of weapon that has been employed; (3) the severity of the victim's injuries; (4) the formality of the interrogation; and (5) the involved parties' statements and actions.  Additional considerations include whether the victim's safety is at substantial imminent risk."  <u>Commonwealth</u> v. <u>Smith</u>, 460 Mass. 385, 392-393 (2011) (citations omitted).

[13] Until the plurality opinion in <u>Williams</u> v. <u>Illinois</u>, 132 S. Ct. 2221 (2012), the Supreme Judicial Court had indicated that the jurisprudence of the confrontation clause under the Sixth Amendment to the United States Constitution was "coextensive" with that under art. 12 of the Massachusetts Declaration of Rights.  <u>Commonwealth</u> v. <u>Barbosa</u>, 457 Mass. 773, 780 n.7 (2010).  Whether that remains so is an open question.

example, statements made during a 911 telephone call by an individual who was assaulted only a short time earlier and is seeking emergency police or medical assistance are not testimonial, even when some of those statements (including those that identify the perpetrator) are the result of questions by an agent of law enforcement who is attempting to resolve the emergency. See, e.g., Commonwealth v. Galicia, 447 Mass. 737, 745 (2006); Commonwealth v. Nesbitt, 452 Mass. 236, 247-248 (2008); Commonwealth v. Beatrice, 460 Mass. 255, 259-261 (2011); Commonwealth v. Middlemiss, 465 Mass. 627, 635-636 (2013). See also United States v. Brito, 427 F.3d 53, 61-62 (1st Cir. 2005), cert denied, 548 U.S. 926 (2006). However, even in the case of a 911 telephone call initiated by the victim of a crime to deal with an ongoing emergency, some statements made during the course of the conversation may be classified as testimonial. See Commonwealth v. Simon, 456 Mass. 280, 300 (2010) ("The victim's two statements [made during 911 call] describing the shooting in great detail related to past events; they were not relevant to resolving the medical emergency, securing the crime scene, or protecting emergency personnel responding to the

---

See Commonwealth v. Tassone, 468 Mass. 391, 404 n.3 (2014). However, the Supreme Judicial Court consistently has followed the primary purpose test as enunciated in Davis and Bryant, which we apply in this case, subject only to the idiosyncratic distinction between statements that are testimonial per se and testimonial in fact.

call").  In another case, all of the statements made by a crime victim during a 911 telephone call were classified as testimonial because they were made in circumstances in which there was no ongoing emergency.  See Commonwealth v. Lao, 450 Mass. 215, 225-226 (2007).

The Supreme Judicial Court also has reviewed cases in which statements were made to the police by victims at the scene of a crime in order to determine whether they should be classified as testimonial notwithstanding their character as excited utterances.  In Commonwealth v. Burgess, 450 Mass. 422, 425, 430-431 (2008), the court explained that based on the facts of the case -- an officer had responded to a 911 hang-up call, heard what appeared to be an argument in progress at the home, and observed a person (later identified as the victim) who appeared to be in distress -- the victim's response ("No, it's not") in reply to the officer's question ("if everything was okay") was not testimonial.  "In these circumstances, the officer's query and the victim's response were part of an attempt by the police to comprehend and deal with what appeared to be a volatile situation."  Id. at 431.[14]  However, the court

---

[14] In Burgess, the court described the victim's statement as neither "testimonial per se," because even though in response to police questioning, it was made in the context of an ongoing emergency, nor "testimonial in fact," because "a reasonable person in the victim's position would not anticipate that his response regarding whether the general situation was 'okay'

described the statements made by the victim following the initial question by the police officer as testimonial.  Ibid. "[T]he officer's subsequent questions and the victim's responses were testimonial per se, as it was then visible to the officer that the defendant was not behaving dangerously; the victim was providing more extended answers to the officer's inquiries; and it was reasonable to conclude that his responses could subsequently be used in a prosecution of the defendant."  Ibid.[15] Similarly, in Galicia, 447 Mass. at 740, the police arrived at

would be used against a specific defendant in investigating and prosecuting a crime."  Burgess, supra at 431.

[15] See Commonwealth v. DeOliveira, 447 Mass. 56, 60-61, 64-65 (2006) (statements made by six year old child to physician at hospital about where she had been unlawfully touched were held not testimonial because they reasonably would be viewed by child as part of medical examination and not in contemplation of prosecution); Commonwealth v. Tang, 66 Mass. App. Ct. 53, 54-55, 59-61 (2006) (five year old child's answers to questions put to him at scene by police officers were not testimonial because they "were posed on an emergency basis while the police were securing a volatile scene," and it was not plausible that the young child "could have spoken in contemplation of a future legal proceeding"); Commonwealth v. Patterson, 79 Mass. App. Ct. 316, 320 (2011) (child's statement made without police questioning, "as the officers walked into a volatile and unstable scene of domestic disturbance," was not testimonial; "[t]here [was] nothing to suggest that the statement was made for any purpose other than to secure aid, let alone that the five year old child had in mind that the statement would or could be used to prove some fact at a future criminal trial"); Commonwealth v. Figueroa, 79 Mass. App. Ct. 389, 397-399 (2011) (statements made by eighty-six year old victim, who suffered from dementia and was a patient in nursing home, were not testimonial because they "were related to medical care even though they were made in an effort to determine what had occurred").

the victim's home five minutes after she telephoned 911 to report that she was being beaten by her husband. The court explained that statements made by the victim during the 911 call were not testimonial because she was reporting an ongoing emergency, but her statements made to the police at her home, minutes later, were testimonial:

> "Viewed objectively, the victim's statements to officers occurred separate and apart from the danger she sought to avert, both temporally and physically. [The responding officer] testified at the motion in limine hearing that, when he arrived, he 'determined that the scene was safe.' By the time the testifying officers had arrived, the assault had ended and urgency had subsided. While the victim may have been 'upset' and visibly 'tearful,' we cannot say that the 'primary purpose' of her statements, objectively viewed, was to 'enable police assistance to meet an ongoing emergency.'"

Galicia, 447 Mass. at 745-746. See Commonwealth v. Foley, 445 Mass. 1001, 1002 (2005).

In the present case, the characteristics of the victim's statements to Officer Hannah that are relevant to a determination of whether those statements are testimonial are as follows: (1) they were spontaneous, not the product of police questioning, and made while the victim was upset and shaken; (2) they were made after the commission of a crime, when the defendant was no longer on the scene, and after a brief conversation with a different police officer; (3) they were not necessary to enable the police to understand or control an ongoing emergency or to obtain medical care for the victim; and

(4) they related exclusively to past events, and were not made to enable the police to secure the scene or to apprehend the defendant.

With regard to the first characteristic, in Davis, the Court indicated that our focus must be on the declarant's statement, and explained that the question whether a statement is testimonial cannot be answered simply on the basis of whether it was procured by police questioning. Davis, 547 U.S. at 822 n.1 ("The Framers were no more willing to exempt from cross-examination volunteered testimony or answers to open-ended questions than they were to exempt answers to detailed interrogation"). Even if the spontaneous quality of her statements and her condition support the view that the statements were made in an atmosphere of informality,[16] that is

---

[16] An understanding of the relationship between the hearsay exception for excited utterances and the confrontation clause, consistent with the analysis set forth in the Crawford-Davis-Bryant trilogy of cases, is that excited utterances are neither automatically exempt from the requirements of the confrontation clause based on their spontaneous nature nor automatically subject to the confrontation clause as out-of-court statements. The United States Court of Appeals for the First Circuit reviewed the debate prior to Davis over how best to harmonize the two doctrines in Brito, 427 F.3d at 60-61. The court noted that some courts have taken the view that excited utterances can never be testimonial, while others "discount the excited nature of the utterance and focus instead on the declarant's objectively reasonable expectations." Id. at 60. The Brito court rejected both approaches in favor of the view that the two inquiries are "distinct but symbiotic":

not a decisive factor. As the court observed in Gonsalves, "[i]f testimonial statements were limited to formal, solemnized, recorded accounts, Crawford would be a recipe to circumvent the confrontation clause by encouraging law enforcement personnel to take elaborate statements informally, as far from the court and the station house as possible." Gonsalves, 445 Mass. at 8.

We think the second, third, and fourth characteristics of the victim's statements lead ineluctably to the conclusion that they are testimonial, just as portions of the victim's 911 call in Simon, and the victim's statements made within five minutes of her 911 call in Galicia, were deemed testimonial. A reasonable person standing in the shoes of the victim in this case would have understood, we think, that the statements she made to a uniformed police officer -- even one she knew as a friend and trusted -- who responded to her home where a domestic

---

"[W]e conclude that the excited utterance and testimonial hearsay inquiries are separate, but related. While both inquiries look to the surrounding circumstances to make determinations about the declarant's mindset at the time of the statement, their focal points are different. The excited utterance inquiry focuses on whether the declarant was under the stress of a startling event. The testimonial hearsay inquiry focuses on whether a reasonable declarant, similarly situated (that is, excited by the stress of a startling event), would have had the capacity to appreciate the legal ramifications of her statement."

Id. at 60-61. The Sixth Circuit Court of Appeals has cited the Brito analysis with approval. See United States v. Hadley, 431 F.3d 484, 504-505 (6th Cir. 2005) (opinion of Rosen, D.J.).

violence incident had just occurred, would be used in the investigation and prosecution of the defendant.

c. Adequate opportunity to cross-examine. A testimonial statement by a nontestifying witness will nonetheless be admissible if, on another occasion, the opposing party had an adequate opportunity to cross-examine the witness. See Crawford, 541 U.S. at 53-54; Gonsalves, 445 Mass. at 3. It is undisputed in this case that the victim, who was the declarant, was unavailable at trial because she had invoked her privilege against self-incrimination. The question, then, is whether the defendant was afforded an adequate opportunity to cross-examine her on the admitted hearsay statements at the pretrial dangerousness hearing. See Hurley, 455 Mass. at 66.

In order to make such a determination regarding a defendant's prior opportunity to cross-examine a witness who does not testify, but, as in this case, whose testimonial hearsay statements made during a pretrial dangerousness hearing conducted under G. L. c. 276, § 58A, are admitted at the defendant's trial, we must decide "whether the defendant's motive to cross-examine at the earlier proceeding [was] similar to his motive to cross-examine at the current trial." Id. at 61, quoting from Commonwealth v. Roberio, 440 Mass. 245, 253 (2003). In the present case, a transcript of the pretrial dangerousness hearing is part of the record on appeal. The

victim testified on direct examination that on the day in question, she was at home with the defendant, her boyfriend. When asked what happened that day, she testified that she had drank a large quantity of alcohol and had taken medications, and had no memory of the events. The witness acknowledged that she knew Officer Hannah, and remembered that Officer Hannah was at her home that day. On cross-examination, the victim testified, without qualification or equivocation, that on that day the defendant did not grab her by her hair, choke her, drag her across the floor, or pin her down on the ground with his knees to her chest. She added that she could only speak and write in Spanish. With regard to a written statement attributed to her and bearing what appeared to be her signature (marked only for identification), she denied writing it and stated that no one explained to her what it was. She testified that she was not afraid of the defendant and had never obtained a restraining order against him. Finally, on redirect examination, the witness clarified her testimony on cross-examination and stated that she did not remember the events of the day in question.

We agree with the Commonwealth that in this case, the defendant's motive in cross-examining the victim at the dangerousness hearing was similar to what his motive would have been had she testified at trial. In view of the statements attributed to the victim by the police and her subsequent

testimony recanting some things and expressing a lack of memory of other things, the defendant's motive at the dangerousness hearing was to depict her as a credible witness just as it would have been had she testified at the trial.  See Commonwealth v. Housewright, 470 Mass. 665, 677-678 (2015).  In a case such as this, in order for the victim's out-of-court statements to be admissible, it was not necessary for the Commonwealth to demonstrate at the dangerousness hearing that defense counsel covered every single detail of the witness's out-of-court statements that were admitted at trial.  See Commonwealth v. Sena, 441 Mass. 822, 833 (2004).  The confrontation clause does not require that the earlier opportunity to cross-examine meet any particular standard of effectiveness.  See Commonwealth v. Cong Duc Le, 444 Mass. 431, 438 (2005)  ("the witness's memory loss about prior events would not impermissibly undermine the opportunity to cross-examine the witness").[17]

Conclusion.  The "primary purpose" test developed by the Supreme Court in Davis and Bryant, and applied by the Massachusetts appellate decisions cited in this opinion, for determining whether an out-of-court statement is testimonial

---

[17] The defendant's reliance on then Justice Liacos's dissent in Commonwealth v. Canon, 373 Mass. 494, 511-513 (1977), is misplaced.  The basis for the dissent was the view that the motive of a civil plaintiff, who later becomes a criminal defendant, to cross-examine a witness during the civil case was markedly different from the defendant's motive to cross-examine if the witness had testified at the criminal trial.

will undoubtedly continue to evolve as the law moves forward. What endures, however, is the insight expressed by Justice Scalia, who authored <u>Crawford</u>, that notwithstanding the concern over trustworthiness that underlies all exceptions to the hearsay rule, including excited utterances, "[d]ispensing with confrontation because testimony is obviously reliable is akin to dispensing with jury trial because a defendant is obviously guilty.  This is not what the Sixth Amendment prescribes." <u>Crawford</u>, 541 U.S. at 62.  The statements made by the victim in this case to Officer Hannah were properly ruled as falling within the excited utterance exception to the hearsay rule, but nonetheless were made in circumstances in which a reasonable person in the victim's position would have appreciated that they would have legal consequences, including the arrest and prosecution of the defendant.  However, the defendant's opportunity to cross-examine the victim at the pretrial dangerousness hearing was adequate and served to render her initial out-of-court statements admissible at trial.

<u>Judgment affirmed</u>.